# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| George Marshall, | Case No.: 2:16-cv-00566-JAD-NJK |
| Plaintiff | **Granting the Defendants' Motion for Summary Judgment and the Plaintiff's Motion to Supplement** |
| v. | |
| James Cox, et al., | [ECF Nos. 27, 32] |
| Defendants | |

Pro se plaintiff George Marshall sues several employees of the Nevada Department of Corrections (NDOC) under 42 U.S.C. § 1983 for constitutional and statutory violations that he alleges occurred while he was an inmate at High Desert State Prison (HDSP) and the Southern Desert Correctional Center (SDCC). I screened his original and amended complaints, dismissing some claims with prejudice and allowing others to proceed.[1] Defendants Bloomfield, Neven, Sanchez, Toycen, and Williams now move for summary judgment. Because these defendants have shown that there is an absence of evidence supporting Marshall's claims against them or that the claims are precluded as a matter of law, I grant them summary judgment. This case thus proceeds against defendants Adams, CB, Maxfield, and Youngblood only.[2]

## Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[3] When considering summary judgment, the court views all facts and draws all

---

[1] ECF Nos. 2, 5.

[2] *See* ECF No. 27 at 2 (excluding these defendants from the summary-judgment motion).

[3] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

inferences in the light most favorable to the nonmoving party.[4] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[5]

"The moving party bears the initial burden of establishing the absence of a genuine issue of material fact."[6] "That burden may be met by . . . 'pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case.'"[7] If the moving party satisfies Rule 56, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[8] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[9]

## Discussion

Each moving defendant has separate claims remaining against him. I thus address each defendant separately.

**I.      Free-exercise claims against Williams**

Defendant Brian Williams was the warden during Marshall's incarceration at SDCC.[10] Marshall claims that Williams and Chaplain Youngblood violated his right to freely exercise his Muslim faith under the First Amendment and the Religious Land Use and Institutionalized

---

[4] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[5] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[6] *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).

[7] *Id.* (quoting *Celotex Corp.*, 477 U.S. at 325).

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[9] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. Dec. 26, 2018).

[10] ECF No. 4 at 16.

Persons Act (RLUIPA).[11] Inmates retain protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion."[12] But certain limitations on an inmate's free-exercise rights "arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security."[13] Therefore, to survive a First Amendment challenge, a prison regulation that burdens an inmate's exercise of his religion must be reasonably related to a legitimate penological interest.[14] Congress enacted RLUIPA "to provide greater protection for religious exercise than is available under the First Amendment."[15] Section 3 of the act applies to inmates in state or local custody,[16] forbidding those governments from "impos[ing] a substantial burden" on the "religious exercise" of inmates, "unless the government demonstrates that imposition of the burden on that person . . . (1) is in furtherance of a compelling governmental interest; and . . . (2) is the least restrictive means of furthering that compelling governmental interest."[17]

Marshall claims multiple violations of the First Amendment and RLUIPA, alleging that he wasn't provided a Halal or Kosher diet, that he wasn't placed on the list for Ramadan services, and that his access to weekly Jumu'ah services was hindered.[18] The weekly-services portion of his claims is based, among other things, on prison staff allegedly harassing Muslim inmates by placing metal detectors at the door to the chapel "every Friday," while other religious

---

[11] *Id*. at 11–12, 15–20, 39–41.
[12] *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).
[13] *Id*.
[14] *Turner v. Safley*, 482 U.S. 78, 89 (1987).
[15] *Holt v. Hobbs*, 135 S. Ct. 853, 859–60 (2015).
[16] *Id*. at 860.
[17] 42 U.S.C. § 2000cc-1.
[18] ECF No. 2 at 2–5.

groups were not subjected to such searches.[19] Marshall appears to blame Williams, as the warden, for implementing this alleged policy or custom.[20]

I allowed this portion of the claim to proceed against Williams at the screening stage, but now at summary judgment, he argues that Marshall has failed to produce evidence that metal detectors were always or consistently used outside Jumu'ah services. Williams points to his response to Marshall's interrogatory on the matter, in which he acknowledges that SDCC uses metal detectors but avers that they "were not used only during Jumah [sic] services" and were "used and placed in various program/work areas throughout the facility, but never left in any particular area for a period of time."[21] Although not entirely clear, Williams appears to be arguing that Marshall has failed to show—at least as to the metal detectors—that his exercise of religion was burdened—an element necessary to both First Amendment and RLUIPA claims. Although Marshall attaches many exhibits to his lengthy opposition to defendants' motion, he has failed to address this argument and thus hasn't highlighted any evidence in the record that disputes Williams's representation.[22] Because Williams has therefore shown that there is no genuine dispute of material fact as to the Jumu'ah services issue and Marshall has failed to satisfy the burden he therefore carries, I grant Williams summary judgment on this facet of the free-exercise claims.

The remainder of Marshall's free-exercise claims all involve acts or omissions that he attributes to Chaplain Youngblood. As for Williams, Marshall alleges only that he is the warden

---

[19] ECF No. 4 at 18.

[20] *See id.*

[21] ECF No. 27-1 at 7.

[22] Although Marshall filed an opposition to defendants' summary-judgment motion, the filing is unresponsive to defendants' specific arguments and comprised mostly of allegations regurgitated from his operative complaint and largely irrelevant information.

4

and is thus "responsible . . . for the execution of all regulations[] and responsible for the practice of religious Faith Group services at SDCC."[23] But it is well established that "[a] supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under section 1983."[24] Marshall merely alleges that Chaplain Youngblood told him that Youngblood had forwarded his request to be placed on the Ramadan list to Williams.[25] Marshall provides no evidence on this point or to show that Williams was otherwise involved in denying him access to Ramadan services or to Halal food. I therefore grant Williams summary judgment on the remainder of Marshall's First Amendment and RLUIPA claims. These claims therefore proceed against Youngblood only.

## II.  Eighth Amendment excessive-force claim against Sanchez

Marshall alleges that, in February 2014, Corrections Officer Sanchez used unnecessary and thus excessive force against him by slamming the breaks on a cart, which caused him to hit his head against the back of the cart, and by punching him in the back of his head.[26] Marshall alleges that he sent a kite to medical because he began suffering from migraines for some period of time.[27] Sanchez argues that he is entitled to summary judgment because Marshall has failed to raise evidence showing that Sanchez ever struck him or that he suffered from migraines. Indeed, Marshall did not serve Sanchez with any discovery requests. And Marshall has failed to respond

---

[23] ECF No. 4 at 16; ECF No. 30 at 25 (repeating this assertion in opposition to the summary-judgment motion).
[24] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).
[25] ECF No. 4 at 15.
[26] ECF No. 2 at 10; ECF No. 4 at 20–22.
[27] ECF No. 2 at 10.

5

to Sanchez's arguments or highlight any evidence to support his claim. My own review of his exhibits didn't reveal any reference to the alleged assault and resulting migraines.[28] Because of this dearth of evidence, I grant Sanchez summary judgment on Marshall's excessive-force claim.

### III. Equal Protection claim against Bloomfield

Marshall alleges that Corrections Officer Sean Bloomfield targeted him for discipline because he is African American and Muslim.[29] He claims that Bloomfield once searched him upon exiting the dining hall and wrote him up for food smuggling after finding an onion on him.[30] Marshall claims that Bloomfield did this to have him lose access to the common-fare diet and, for a period of time, similarly targeted only other African American inmates.[31] In response to Marshall's interrogatories, Bloomfield acknowledged that "inmates are watched for any attempts to take food from the kitchen," but he denied singling out inmates.[32]

Bloomfield moves for summary judgment on this claim, arguing that Marshall has failed to come forward with evidence of discrimination. I agree. Marshall has baldly alleged that Bloomfield targeted him and other inmates, but he has provided no evidence from which I could even infer discriminatory actions. I therefore grant Bloomfield summary judgment on the Equal Protection claim.

---

[28] The only reference to migraines I found was a medical-request form from 2013—a year before the alleged assault—which made no mention of being hit in the head. ECF No. 32-2 at 13.
[29] ECF No. 4 at 39–40; ECF No. 2 at 12–14.
[30] ECF No. 2 at 12.
[31] *Id*. at 12–13.
[32] ECF No. 27-3 at 7.

## IV. First Amendment retaliation claim against Toycen

Marshall alleges that Corrections Officer James Toycen searched his cell in March 2012, and when asked by Marshall why the search was happening, Toycen responded, "This will teach you about grieving about one of my officers."[33] Toycen moves for summary judgment on this claim, pointing out that Marshall did not specify in his complaint what earlier grievance Toycen was allegedly retaliating against him for and that the other grievances that Marshall references throughout his claims occurred after 2012.[34] Toycen also highlights the lack of evidence supporting the allegation that the search even took place or that it was done for a retaliatory purpose.

In response, Marshall merely alleges that the search occurred a year later, on March 2013, and happened two days after he submitted a grievance about another corrections officer for "abuse of power . . . ."[35] But an opposition to a motion for "summary judgment is not a procedural second chance to flesh out inadequate pleadings."[36] And even if I were to consider these new allegations, they don't compensate for the lack of evidence supporting this claim. Although Marshall served Toycen with interrogatories and asked him broadly about "complaints of retaliation,"[37] Marshall never specifically raised the alleged search that gave rise to his claim against Toycen. I therefore grant Toycen summary judgment on the retaliation claim.

---

[33] ECF No. 5 at 7.
[34] ECF 27 at 9.
[35] ECF No. 30 at 10.
[36] *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).
[37] ECF No. 27-2 at 5.

## V. Due Process claim against Neven

Defendant Dwight Neven was the warden during Marshall's incarceration at HDSP.[38] Marshall alleges that a separate, nonmoving defendant violated his right to due process by, among other things, holding a disciplinary hearing and finding Marshall guilty of an infraction without giving him at least 24-hours notice of the hearing and not calling any of the witnesses he requested.[39] Marshall attempts to extend this alleged constitutional violation to Neven, who undisputedly denied the grievance Marshall filed to appeal the disciplinary hearing.[40] But it is well-established that an inmate does not have a constitutional right to any particular grievance procedure or result and that a supervisor's denial of a grievance alone is not sufficient to state a claim against him.[41] This stems from the principle, discussed above, that a supervisor can be held liable under § 1983 for his own actions or omission only—not vicariously for his subordinates' misdeeds.[42] I therefore grant Neven summary judgment on this claim.

---

[38] ECF No. 5 at 5.

[39] *Id.* at 10–12; ECF No. 4 at 37–38.

[40] ECF No. 30 at 77–78 (grievance), 84 (Neven's response).

[41] *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[A] prisoner may challenge a disciplinary action which deprives or restrains a state-created liberty interest in some unexpected manner. Ramirez's claimed loss of a liberty interest in the processing of his [administrative] appeals does not satisfy this standard, because inmates lack a separate constitutional entitlement to a specific prison grievance procedure." (internal quotation marks and citation omitted); *see also Shallowhorn v. Molina*, 572 F. App'x 545, 547 (9th Cir. 2014) (citing *Ramirez* and holding that "[t]he district court properly dismissed the claims against [other defendants] because those defendants were only involved in the appeals process. Because 'inmates lack a separate constitutional entitlement to a specific grievance procedure,' these defendants cannot be held liable under § 1983 for denying Shallowhorn's appeal").

[42] *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("[Warden Collins's] sole involvement was to review the merits of [the prisoner-plaintiff's] assignment to segregation. . . . Such notice can only facilitate personal involvement in a deprivation of rights where the harm continues over a period of time. Consequently, Collins could only be personally liable for the conduct of the adjustment hearing under a theory of *respondeat superior*. He was therefore not sufficiently personally involved in the hearing process to be liable under § 1983 for any procedural defects."); *Crowder v. Lash*, 687 F.2d 996, 1006 (7th Cir. 1982) ("The logical import of this

## VI. Motion to supplement

After briefing on defendants' summary-judgment motion was complete, Marshall moved to supplement his opposition with additional exhibits.[43] I grant his request, and I have considered these supplemental materials in reaching my decision to grant summary judgment.[44] As with Marshall's opposition, he has not directed the court to any specific evidence that he believes defeats defendants' motion. I have conducted my own brief review of the provided documents, but nothing undermines the conclusions reached above. I caution Marshall that, in opposing any subsequent motions, he must direct the court to evidence he believes supports his claims. Judges are not "pigs sniffing for truffles,"[45] and I will in the future decline to comb through the record on his behalf.

## Conclusion

Accordingly, IT IS HEREBY ORDERED that the defendants' **motion for summary judgment [ECF No. 27] is GRANTED**. This case proceeds against defendants Adams, CB, Maxfield, and Youngblood only.

---

theory, however, would be to hold any well informed Commissioner of Corrections personally liable for damages flowing from any constitutional violation occurring at any jail within that Commissioner's jurisdiction. We believe that such a broad theory of liability is inconsistent with the personal responsibility requirement for assessing damages against public officials in a section 1983 action.").

[43] ECF No. 32.

[44] *See, e.g.*, *supra*, note 28.

[45] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386 (9th Cir. 2010).

IT IS FURTHER ORDERED that Marshall's **motion to supplement [ECF No. 32] is GRANTED.**

Dated: March 25, 2019

_____
U.S. District Judge Jennifer A. Dorsey